
UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. 12-40039 |
| Plaintiff, | |
| vs. | |
| CARL CAMPBELL, a/k/a "Nutty Boy," a/k/a Carl Smith, a/k/a Karl Campbell, a/k/a Earl Campbell, a/k/a Carl Michael, | REPORT and RECOMMENDATION (Motion to Suppress, Doc. 29) |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending is Defendant Carl Campbell's Motion to Suppress (Doc. 29). A hearing was held on Wednesday, October 3, 2012. Defendant was personally present and represented by his counsel of record, Mr. Jeff Larson. The Government was represented by Assistant United States Attorney Mr. Jeff Clapper. Department of Homeland Security Special Agent Charla Aramayo testified at the hearing. Both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Additionally, the Court has taken judicial notice of Ms. Aramayo's Application for Search Warrant, Affidavit in Support of Search Warrant dated April 16, 2012, including Attachment A thereto, and the resulting Warrant which was issued, all of which are attached to this decision as EX 1.[1] Based on a careful consideration of all of the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## **RECOMMENDATION**

It is respectfully recommended that Defendant's Motion to Suppress be **DENIED**.

---

[1] Aramayo's Affidavit, the Application and the Warrant are all sealed in the Clerk's file and EX 1 is likewise sealed. The Affidavit contains information which is routinely sealed such as social security numbers, phone numbers, and the full name of Aramayo's source of information. Although the Affidavit is referred to and quoted in the Report and Recommendation, any confidential information which requires the sealing of EX 1 has been redacted or excised so that the Report and Recommendation is appropriate for public viewing.

## JURISDICTION

Defendant is charged in a Superseding Indictment with Sex Trafficking By Force, Fraud or Coercion and aiding and abetting, counseling commanding, inducing, procuring and willfully causing the same in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(1) and 18 U.S.C. §§ 2(a) and 2(b); Interstate Transportation for Prostitution in violation of 18 U.S.C. § 2422; Sex Trafficking of a Child and aiding and abetting, counseling commanding, inducing, procuring, and willfully causing the same in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(2) and 1591(c) and 18 U.S.C. §§ 2(a) and 2(b); and Obstruction of Sex Trafficking Enforcement in violation of 18 U.S.C. § 1591(d). The pending Motion to Suppress was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's Standing Order dated March 18, 2010.

## FACTUAL BACKGROUND

Charla Aramayo testified during the evidentiary hearing which was held on Wednesday, October 3, 2012. Her testimony is summarized below:

### Charla Aramayo

Ms. Aramayo is an agent with the Department of Homeland Security. She was involved in the investigation of Carl Campbell. She applied for a search warrant related to items seized in Cook County, Illinois. In her Affidavit, she included the details of the investigation that led up to her applying for the warrant. She received items of evidence from the States's Attorney from Cook County. The items were in sealed bags except for some laptop cables. She received evidence from Chicago after Mr. Campbell was acquitted of criminal charges in Chicago, but she did not put that information in her Affidavit.

### The Application, Affidavit and Warrant

The Court has taken judicial notice of the Application, Affidavit and Warrant which Campbell challenges as insufficient and which are the basis of this suppression motion. They are collectively marked as EX 1 and attached to this decision. Selected portions and paragraphs of Aramayo's Affidavit are reproduced below for the convenience of the reader:

2

\*\*\*

I, Charla Aramayo, being duly sworn on oath, depose and say:

1. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI) in Sioux Falls, South Dakota, and have been duly employed in this position since May 2003 and prior to that as a Special Agent with Immigration and Naturalization Service since 1998. I am a graduate of the Immigration Special Agent Training Program at the Federal Law Enforcement Program at the Federal Law Enforcement Training Center and received cross training relating to Customs investigations after the merger of INS and US Customs Service.

3. Through this Affidavit, I am requesting that a search warrant be issued for the following:
   a. Sealed bag with label 11-15780:006 Desc: [ED06] Toshiba Laptop
   b. Sealed bag with label 11-15780:019 Desc: [ED08] Disc of evidence
   c. Unsealed bag with label 11-15780:006A Desc:[ED07] Toshiba Laptop
   d. Sealed bag with label 11-15780:005 Desc [othr] Various ID cards
   e. Sealed bag with label 11-15780:015 Desc [QD04] 2 state ID cards
   f. Sealed bag with label 11-15780:018 Desc [CD03] CD of evidence ph
   g. Sealed bag with label 11-15780 Item7, Desc Eight cell phones
   h. Sealed bag with label 11-15780:004 Desc [SXP1] Box of Trojan c
   I. Sealed bag with no label

6. In or about May of 2011, the Sioux Falls Police Department (SFPD) began a prostitution investigation in Sioux Falls, SD. Between approximately May 2011 and December 2011, the SFPD gathered information from confidential informants and police records regarding prostitution advertised on the Internet in Sioux Falls, SD. In January, 2012, the Department of Homeland Security, Homeland Security Investigations (HSI) in Sioux Falls, SD began a federal investigation of the criminal activity due to information that several of the individuals who were involved in prostitution were juveniles.

7. On March 20, 2012, I interviewed an adult female referenced here as MA, regarding MA's involvement in prostitution. MA advised that MA began dating Carl Campbell in approximately August 2010 and shortly after they began dating Campbell assaulted MA at a party by punching MA in the face which led to MA having a fractured eye socket. In approximately October or November of 2010, MA went to a hotel in Sioux Falls, SD with Campbell for a weekend getaway. At the hotel Campbell advised MA that MA was going to prostitute for Campbell. Campbell gave MA instructions on what to do and supplied MA with condoms. MA engaged in prostitution and was forced to turn all of the money over to Campbell. MA continued to prostitute for Campbell who paid MA's living expenses and rent. On 2-3 occasions, MA tried to keep the money that was earned from prostitution but Campbell found out and assaulted MA. Campbell placed on-line ads for MA on

3

Backpage.com using an alias and photos of other women. MA estimates that she engaged in approximately 50 prostitution acts for Campbell. Campbell assaulted MA approximately 8-10 times and was arrested several times for domestic abuse but never prosecuted because MA was afraid of what Campbell would do if MA testified against Campbell.

8. In June, 2011, MA traveled with Campbell to Chicago, IL. On the way, Campbell and MA stopped in Madison, WI for a week where MA engaged in prostitution. While in Wisconsin, MA declined a date for prostitution and accidentally hung up during a call from a potential customer. Campbell became angry and shortly thereafter assaulted MA by kicking MA in the ribs. The next day MA and Campbell went to an area near Chicago, IL and stayed for 2 weeks in an area known for prostitution. MA engaged in approximately 20 acts of prostitution in Chicago, IL. On the last night in Chicago, IL, MA decided to leave Campbell and encouraged Campbell to drink enough alcohol to so that he would eventually pass out. MA left the hotel after Campbell passed out and was subsequently pulled over by police. While at the police station MA told police about MA's involvement with Campbell and prostitution. MA returned to South Dakota and subsequently learned that Campbell had been arrested and charged with prostitution offenses in Illinois.

9. In March, 2012 I learned that Carl Campbell was incarcerated in the Cook County Jail, Chicago, IL for prostitution offenses. On March 22, 2012 I made contact with Cook County State's Attorney and a Grand Jury subpoena was served upon the Cook County State's Attorney's office and the Cook County Clerk of Courts requesting any and all evidence recovered in the investigation culminating in the arrest of Carl Campbell on or about July 12, 2011, charged as promoting prostitution under case no. 11CR 11843.

10. On April 3, 2012, I received a box containing the items listed above from the Cook County State's Attorney's office. A letter was also with the items advising that the following items were being provided in response to the subpoena:
    a. People's Exhibit 1 RCFL CD-R
    b. People's Exhibit 2 Consent to Search (name redacted)
    c. People's Exhibit 3 Photograph of laptop and items on desk
    d. People's Exhibit 4 Social Security card Carl Michael Campbell
    e. People's Exhibit 5 (2) page print out "Bet you never seen a pair like these"
    f. People's Exhibit 6 (2) page print out "Bet you never seen a pair like these"
    g. Statement of Miranda Rights 7/13/11 00:08 hours
    h. People's Exhibit 8 photograph of Carl Campbell retrieving items
    I. Statement of Miranda 7/13/11 19:54 hours
    j. People's Exhibit 10 (2) page printout Ad Management
    k. People's Exhibit 11 (3) page printout backpage.com Madison, WI Step 2: Preview Ad
    l. People's Exhibit 12 (3) page printout backpage.com Madison, WI Step 2:

4

| | | |
|---|---|---|
| | m. | People's Exhibit 13 (4) page printout logged in as Carl.michael116@yahoo.com Ad Management |
| | n. | Defense Exhibit 1 photograph of receipt |
| | o. | Defense Exhibit 2 photograph of beer, cell phone Trojan on desk |
| | p. | Unopened inventory 11-15780:005 "Ricky Cordova" contents of wallet |
| | q. | Unopned (sic) inventory 11-15780:015 Illinois ID card Carl M Campbell; Minnesota ID card Carl Michael Campbell –comfort inn keycard |
| | r. | Unopened inventory 11-15780:018 3 cds of evidence photographs |
| | s. | Unopened inventory 11-15780:004 box of trojans |
| | t. | Unopened inventory 11-15780 (8) cell phones |
| | u. | Unopened inventory 11-15780:019 Regional Computer Forensics Lab evidence |
| | v. | Unopened inventory 11-15780:006 Toshiba laptop and cord |
| | w. | Previously opened and inventoried evidence consisting of a Guest Check (redacted name and telephone number) |
| | x. | Previously opened inventory 11-15780:017 packet of documents |
| | y. | Previously opened inventory 11-15780:016 contents of Carl Campbell's wallet |

11. On April 3, 2012, I conducted an inventory of the items provided by the Cook County State's Attorney's Office, however I did not open any sealed bags. During the inventory I noted the following:
    - Sealed bag with label 11-15780:006 Desc [ED06] Toshiba Laptop. The bag is not transparent, however a laptop computer is visible within the bag.
    - Sealed bag with label 11-15780:019 Desc [ED08] Disc of evidence. The visible contents of the bag include a disc and what appears to be a hard drive inside a plastic case.
    - Unsealed bag with label 11-15780:006A Desc:[ED07] Toshiba laptop. The visible contents are various cables and there is no laptop computer in the bag.
    - Sealed bag with label 11-15780:005 Desc:[othr] Various ID cards. The visible contents include miscellaneous credit card(s), ID card(s) and paper documents.
    - Sealed bag with label 11-15780:015 Desc [QD04] 2 state ID cards. The visible contents include a Minnesota and Illinois driver's license and/or ID card for Carl Campbell and a Comfort Inn keycard.
    - Sealed bag with label 11-15780:018 Desc [CD03] CD of evidence ph. The visible contents are approximately 3 discs in envelopes.
    - Sealed bag with label 11-15780 Item 7, Desc. Eight cell phones. The visible contents are 8 cell phones.
        1. Blackberry, red in color with red plastic cover (S/N not visible)
        2. LG T-Mobile, pink in color (S/N not visible)

5

|     |     |
| --- | --- |
| 3.  | Alltel Samsung, black in color (S/N not visible) |
| 4.  | Samsung, model SGH-A117 SN A117GSMH |
| 5.  | Verizon Samsung, model 9CH-U360, MEID HEX: A00000246D959A |
| 6.  | LG, model LG220CM, S/N 005CYEA1520204 |
| 7.  | Samsung, model SPH M340, HEX A000001D5A6B45 |
| 8.  | HTC Sprint, brown in color (S/N not visible) |

- Sealed bag with label 11-15780:004 Desc [SXP] Box of Trojan c. The visible contents are a box of Trojan condoms.
- Sealed bag with no label. The visible contents include various sealed/unsealed bags, miscellaneous documents, photos and credit cards.

12. On April 3, 2012, I spoke to Det. Don Giuliani with the Franklin Park Police Department in the Village of Franklin Park, IL. Det. Giuliani investigated the case regarding MA and Carl Campbell relating to prostitution in July 2011. Det. Giuliani interviewed MA in mid July 2011 after MA was encountered by law enforcement during a traffic stop near a hotel in an area known for prostitution. Det. Giuliani interviewed MA who provided information concerning MA's and Campbell's involvement with prostitution. Det. Giuliani advised that MA had granted consent to search the hotel room that had been rented by MA and law enforcement located Campbell in the room and seized items including a laptop computer and several cell phones. Det. Giuliani advised that the laptop computer was examined and evidence of the use of various websites to advertise prostitution had been found.

13. I believe based on the above information that the items provided by the Cook County State's Attorney and described above contain evidence of commercial sex trafficking in violation of 18 U.S.C. 1591 and 2421-2423 and that there is probable cause to believe that the cellular phones and laptop computer, described above were used or attempted to be used to facilitate the illegal activity. I request to seize all of the items described above to search the phone devices' media files, videos, text messages, call logs, address books, and any other stored information as well as the laptop computer for any evidence that pertains to sex trafficking and/or transportation for sexual activity and related crimes, more fully described in Attachment A hereto, incorporated herein by reference.

14. I know based on my training and experience that it is common for people involved in sex trafficking to keep records of their activities, sometimes in communication devices and computers.

15. I know that communication devices and computers may be important to a criminal investigation in two distinct ways: (1) the objects themselves may be contraband, evidence, instrumentalities, or fruits of a crime, and/or (2) the objects may be used as storage devices that contain contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data. In this

6

case, I request permission to search the contents of all electronically stored information within the above-described communication devices and computer.

16. Based upon my knowledge, training and experience, I know that it is often necessary for seized cellular phones and computers to be searched later by a qualified computer expert in a laboratory or other controlled environment.

17. I believe based on the above information that Carl Campbell has been involved in sex trafficking activities in Sioux Falls, South Dakota.
18. Based on the above, I believe that there is probable cause that evidence of sex trafficking activities in violation of 18 U.S.C. Sections 1591 and 2421-2423 exist within the items described above and currently located within the office of Homeland Security Investigations, Sioux Falls, SD.

\*\*\*

## DISCUSSION

Campbell moves to suppress "all evidence obtained or derived from the search of property specified in Search and Seizure Warrant # MC-54 issued on April 16, 2012 by the Honorable John Simko, United States Magistrate and executed on the same date . . ." Campbell asserts the search of the subject property violated the Fourth Amendment because Aramayo's Affidavit failed to establish probable cause and because it lacks particularity in describing the property to be searched.

**Burden of Proof**

The, the burden of proof is on the defendant who seeks to suppress evidence. *United States v. Phillips*, 540 F.2d 319 (8th Cir.1976). "A movant seeking to suppress evidence under a regularly issued warrant has the burden to show that the warrant was issued without probable cause." *United States v. Sierra-Garcia*, 760 F.Supp. 252, 262 (E.D.N.Y. 1991) (citations omitted). The standard of proof is a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

1.  **The Affidavit Provided Probable Cause**

A valid search warrant must be based upon a finding by a neutral, detached judicial officer that there is probable cause to believe evidence, instrumentalities, or fruits of a crime, contraband, or a person for whose arrest there is probable cause may be found in the place to be searched.

*Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) (citations omitted). Campbell does not claim the undersigned was anything other than neutral and detached. Rather, Campbell argues the Affidavit was insufficient to provide probable cause to issue the search warrant.[2] This Court believed probable cause existed upon initial review of Aramayo's Affidavit. Campbell's Motion has not persuaded me otherwise.

"Probable cause is a fair probability that contraband or evidence of a crime will be found in the location searched." *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996)(citation omitted). "The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) (citations omitted). Probable cause is a "fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

When the issuing judge relies solely upon the supporting affidavit of the law enforcement officer seeking the warrant, only that information found within the four corners of the affidavit may be considered in determining the existence of probable cause. *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999) (citations omitted). Whether an affidavit is sufficient to support a probable cause finding to issue a warrant is determined by considering the totality of the circumstances presented. *Illinois v. Gates*, 462 U.S. at 230. Sufficiency of the affidavit is not determined by a piecemeal approach, and the elements of the affidavit should not be read in isolation. *United States v. Sumpter*, 669 F.2d 1215, 1218 (8th Cir. 1982). "Applications and affidavits should be read with common sense and not in a grudging, hyper technical fashion." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). A probable cause finding may be based upon hearsay from reliable persons, independently corroborated hearsay statements from confidential informants, and observations made by trained law enforcement officers. *Walden v. Carmack*, 156

---

[2] In his brief which was probably filed before receipt of all of the discovery materials from the Government, Campbell alleged the items in question were searched without a warrant by the Cook County law enforcement personnel in Illinois. The Government, however indicated in its brief that the Cook County law enforcement officials obtained a warrant before conducting their search, and has identified the Cook County warrant and application by the discovery document numbers which have now been disclosed to Campbell. *See* Government's Brief, Doc. 33, p. 3.

F.3d at 870 (citations omitted). Once a judge has issued a warrant upon a finding of probable cause, that finding deserves great deference. Therefore, the inherent assumption that the supporting affidavit is sufficient to provide probable cause is likewise accorded great deference. *Illinois v. Gates,* 462 U.S. at 236; *Walden v. Carmack,* 156 F.3d at 870. "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed. 2d 684 (1965)(citation omitted).

Aramayo's Affidavit lacks information about the credibility, reliability, or veracity of the her source, MA. "The credibility and reliability of a person providing information to the police are important factors to be considered. They are not, however, separate and independent requirements to be rigidly exacted in every case." *United States v. LaMorie,* 100 F.3d 547, 553 (8th Cir. 1996)(citations omitted). *See also United States v. McAtee,* 481 F.3d 1099, 1102 (8th Cir. 2007). Also, if some information from an informant is shown to be reliable because of corroboration, it is a permissible inference that other, uncorroborated information is also reliable. Aramayo corroborated the information provided by MA. She confirmed that Campbell had in fact been arrested in Chicago in July, 2011 for prostitution-related crimes after MA fled from the hotel room she had previously shared with him.[3] Also, MA gave information based on her first-hand observation of events which happened in her presence. "There is an inherent indicia of reliability in the richness and detail of a first-hand observation." *United States v. Warford,* 439 F.3d 836, 842 (8th Cir. 2006).

In this case, Aramayo interviewed MA about her involvement with Campbell and her involvement with prostitution. MA told Aramayo that Campbell forced her to prostitute herself, and that during the time Campbell forced her to engage in prostitution (specifically in July, 2011) she shared a hotel room with Campbell in Chicago. MA told Aramayo that as she fled the Chicago hotel room, she encountered the Chicago police. MA told the Chicago police about Campbell's

---

[3]Defense counsel noted during the evidentiary hearing that Campbell was ultimately acquitted of the charges in Illinois. That he was acquitted in Illinois, however has no bearing on the probable cause determination. This court has no information about the circumstances of the acquittal.

9

involvement in prostitution. MA gave the police consent to search the hotel room, and Campbell was arrested on charges of promoting prostitution on July 12, 2011. Aramayo called the Cook County Attorney and discovered he retained possession of the items which were seized from the room from which MA fled in July, 2011. Aramayo knew that MA, at the time MA fled from the room, had been prostituting herself at Campbell's insistence. Aramayo knew, that "it is common for people involved in sex trafficking to keep records of their activities, sometimes in communication devices and computers." *See* Affidavit, ¶ 14. Aramayo knew, based on her conversation with Giuliani, that some of the items from the hotel room from which MA fled in July 2011 and which were in the possession of the Cook County attorney, were communication devices and computers. *See* Affidavit, ¶¶ 3, 10, 11, 12, 13. Given these facts, there was "a fair probability that contraband or evidence of a crime will be found in the location searched." *United States v. LaMorie*. 100 F.3d 547, 552 (8th Cir. 1996)(citation omitted).

In *United States v. Sumpter*, 669 F.2d 1215, 1220 (8th Cir. 1981) the defendant moved to suppress evidence based upon the alleged insufficiency of the affidavit supporting the search warrant. In that case, there was an anonymous complaint from a neighbor about excessive traffic in and around the defendant's home. The defendant had a previous drug conviction. There was also a confidential informant who provided specific details about defendant's continuing drug sale activity. The defendant in *Sumpter* in essence dissected each source of information contained in the affidavit, and contended none was sufficient to support a probable cause finding. The Eighth Circuit, however, found the affidavit sufficient.

> Although each allegation in the affidavit, standing alone, may not be sufficient in the instant case, we believe that the coalescence of all these factual allegations leads to the inescapable conclusion that there was a sound basis to believe that probable cause existed to issue the warrant to search the [defendant's] residence for narcotic drugs and controlled substances. To conclude otherwise would ignore substance in favor of rigid requirements of form and place [stingy] limitations on common sense.

*Sumpter*, 669 F.2d at 1222. The same is true here. A practical, common sense evaluation of the totality of the circumstances presented to the undersigned provided a substantial basis to find probable cause to issue the warrant. Reviewing courts are discouraged from exercising a grudging or negative attitude toward warrants, *United States v. Ventresca*, 85 S.Ct. at 746; and to give substantial deference to the determination of probable cause by the judge who issued the warrant. *United States v. LaMorie*, 100 F.3d at 552. A commonsense realistic (re)view of the Affidavit in this

case leads to the conclusion that there was probable cause to issue the warrant.

## 2. The Particularity Requirement

Next, Campbell asserts the warrant is invalid because it insufficiently describes the items to be searched. As described above, many of the items Aramayo requested permission to search arrived from Cook County in sealed bags. She could not, therefore, describe them with much more particularity without unsealing the bags and conducing a warrantless search.

The Court takes guidance from *United States v. Johnson*, 541 F.2d 1311, 1313-14 (8th Cir. 1976).

> The Fourth Amendment prohibited 'general warrants' in an effort to prevent exploratory rummaging in a person's belongings by requiring that a 'particular description' of the thing to be seized be stated in the warrant. The constitutional standard for particularity of description in a search warrant dictates that the language be sufficiently definite to enable the searcher to reasonably ascertain and identify the place authorized to be searched and the things authorized to be seized. The underlying measure of adequacy in the description is whether given the specificity in the warrant, a violation of personal rights is likely. The standard to be used in this determination is one of practical accuracy rather than technical nicety. Much of the caselaw addressing the issue of warrant particularity concerns sufficiency in the description of the premises to be searched rather than the items to be seized, though the same basic test appropriately applies to both.
>
> \*\*\*
>
> This court realistically recognized the technical difficulties involved in search warrant language when it observed that the degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved. Where the precise identity of goods cannot be ascertained at the time the warrant is issued, naming only the generic class of items will suffice because less particularity can be reasonably expected than for goods . . .whose identity is already known at the time of issuance. . . .

*Id.* Aramayo subpoenaed the Cook County Illinois State's Attorney for "any and all evidence recovered in the investigation culminating in the arrest of Carl Campbell on or about July 12, 2011, charged as promoting prostitution under case no. 11 CR 11843." In response to her subpoena, she received several items, including those she for which she requested the search warrant which is the subject of the pending motion to suppress. The description Aramayo provided in her Affidavit and which is included in the Warrant as Attachment A is sufficiently definite to enable the searcher to

reasonably ascertain and identify the place authorized to be searched and the things authorized to be seized. Given the circumstances involved (that the items were received in sealed bags and could not be described with more particularity absent a warrantless search) this court follows the advice given in *Johnson*, that "the degree of specificity required when describing the goods to be [searched] may necessarily vary according to the circumstances and type of items involved." Given the circumstances of this case, neither the Affidavit nor the warrant violated the particularity requirement of the Fourth Amendment.

### 2. The Leon Good Faith Exception

Even if the reviewing Court disagrees with this Court's conclusion regarding probable cause, Aramayo relied on the warrant in good faith. When a search warrant is not supported by probable cause, evidence obtained as a result of the warrant is generally inadmissible. *Mapp v. Ohio*, 367 U.S. 643, 655-57, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). There is an exception, however, for evidence obtained by an officer who relied in objective good faith on a search warrant. *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

There are four circumstances in which the *Leon* good faith exception does not apply and suppression remains an appropriate remedy: (1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made in reckless disregard for the truth; (2) the issuing magistrate judge wholly abandoned his or her judicial role; (3) the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.*" United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001). The third and fourth circumstances seem to be at odds with the oft-cited principle that "when assessing the objective reasonableness of police officers executing a warrant, we must look to the totality of the circumstances, *including* any information known to the officers but not presented to the issuing judge." Id. (emphasis added). *See also United States v. Weeks*, 160 F.3d 1210, 1212 (8th Cir. 1998) ("when assessing the objective good faith of police officers executing a warrant, we must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge."); *United States v. Martin*, 297 F.3d 1308, 1314, 1318 (8th Cir. 2002) (noting the affidavit in support of the warrant did not link the defendant to either the criminal activity nor the

residence to be searched, but "despite its deficiencies" it was not entirely unreasonable for the officer to believe the warrant was valid. The Court noted "we find we can look beyond the four corners of the affidavit and search warrant to determine whether [the officer] reasonably relied upon the warrant.").

During the hearing, Campbell's cross-examination of Aramayo revealed that (1) Campbell was acquitted of the criminal charges in Illinois and (2) the "several" juveniles to which Aramayo referred in ¶ 6 of her affidavit were in reality two juveniles. Campbell has not overtly suggested, and the Court does not perceive these statements (or omissions) as rising to the level of the first category of the *Leon* exception, in other words having been made with the intent to mislead or in reckless disregard for the truth. Likewise, none of the other *Leon* exceptions apply.

## CONCLUSION

For the reasons more fully explained above, it is respectfully RECOMMENDED to the District Court that Campbell's Motion to Suppress (Doc. 29) be DENIED.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)
*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986)

Dated this 23 day of October, 2012.

BY THE COURT:

_____
John E. Simko
United States Magistrate Judge

13