UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 12-40039-01-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER ADOPTING MAGISTRATE |
| | ) | JUDGE'S REPORT AND |
| CARL CAMPBELL, | ) | RECOMMENDATION |
| a/k/a "Nutty Boy," | ) | |
| a/k/a Carl Smith, | ) | |
| a/k/a Karl Campbell, | ) | |
| a/k/a Earl Campbell, | ) | |
| a/k/a Carl Michael, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant, Carl Campbell, was indicted on two counts related to sex trafficking and prostitution. Docket 1. Campbell moves to suppress all of the evidence obtained as a result of a search and seizure that was conducted pursuant to warrant. Docket 29. The motion was referred to Magistrate Judge John Simko, who issued a report and recommendation recommending denial of the motion. Docket 38. Campbell objects to that order. Docket 42. For the reasons set forth below, Magistrate Judge Simko's report and recommendation is adopted in its entirety, and the motion to suppress is denied.

**BACKGROUND**

The Sioux Falls police department began an investigation into prostitution in the Sioux Falls, South Dakota, area in May of 2011. The Department of Homeland Security and Special Agent Charla Aramayo became

involved in the investigation shortly thereafter. In the course of her investigation, Aramayo interviewed an adult female known as "M.A." about her involvement with prostitution. At that time, M.A. made a number of allegations against Campbell, including that he had forced her into prostitution using violence or threats of violence.

M.A. told Aramayo that she and Campbell traveled to Wisconsin and Illinois for the purpose of engaging in prostitution in addition to the prostitution activities in the Sioux Falls area. Once M.A. and Campbell reached Illinois they stayed in an area known for prostitution. M.A. told Aramayo that she attempted to flee from Campbell's control one evening and encountered Illinois law enforcement during a traffic stop. M.A. told Illinois police about Campbell's control over her and her forced involvement in prostitution. M.A. told Aramayo that she then returned to South Dakota and eventually learned that Campbell was arrested and charged with prostitution-related offenses in Illinois.

Aramayo learned that Campbell was incarcerated in the Cook County jail for prostitution offenses in March of 2012. On March 22, 2012, Aramayo contacted the Cook County State's Attorney's Office and the Cook County Clerk of Courts and served upon them a grand jury subpoena that requested any and all evidence that was recovered in the investigation resulting in the arrest of Carl Campbell in Illinois on or about July 12, 2011.

On April 3, 2012, Aramayo contacted Detective Don Giuliani with the Franklin Park Police Department[1] to inquire about Campbell, M.A., and prostitution activities in Illinois in 2011. Giuliani was the police officer who interviewed M.A. after she was stopped in Illinois in an area known for prostitution. Giuliani stated that at the time of her traffic stop, M.A. provided information about Campbell and prostitution. Giuliani also stated that M.A. granted consent for Illinois law enforcement to search the hotel room[2] that she shared with Campbell. Upon entering the hotel room, law enforcement officers found Campbell. They conducted a search of the hotel room and seized evidence, including a laptop computer, multiple cell phones, and condoms, among other things. Giuliani also told Aramayo that a laptop computer was searched and evidence was discovered as to that computer's use of websites to advertise prostitution.

Also on April 3, 2012, Aramayo received a box of evidence from the Cook County State's Attorney's Office pursuant to her subpoena. Aramayo conducted an inventory of the items provided by Cook County, but she did not open any sealed bags. During her inventory, Aramayo noted the number of bags, whether

---

[1] Franklin Park, Illinois, is a suburb of the Chicago metro area and is within the boundaries of Cook County.

[2] There is evidence that the hotel room was rented in M.A.'s name.

they were sealed or unsealed, any labels, and descriptions of what she perceived the contents of the bags to be.

Based on that information, Aramayo composed an affidavit to request a warrant to search the items[3] seized by law enforcement in Illinois and subsequently sent to Aramayo by the Cook County State's Attorney's Office. Aramayo stated that she believed the items contained evidence of Campbell's involvement in commercial sex trafficking and that "there is probable cause to believe that the cellular phones and laptop computer described above were

---

[3] Aramayo's inventory of the evidence received from Cook County, which was included in her affidavit, was the following list: "Sealed bag with label 11-15780:006 Desc: [ED06] Toshiba laptop. The bag is not transparent, however, a laptop computer is visible within the bag. Sealed bag with label 11-15780:019 Desc: [ED08] Disc of evidence. The visible contents of the bag include a disc and what appears to be a hard drive inside a plastic case. Unsealed bag with label 11-15780:006A Desc: [ED07] Toshiba laptop. The visible contents are various cables and there is no laptop computer in the bag. Sealed bag with label 11-15780:005 Desc: [othr] Various ID cards. The visible contents include miscellaneous credit card(s), ID card(s) and paper documents. Sealed bag with label 11-15780:015 Desc: [QD04] 2 state ID cards. The visible contents include a Minnesota and Illinois driver's license and/or ID card for Carl Campbell and a Comfort Inn keycard. Sealed bag with label 11-15780:018 Desc: [CD03] CD of evidence ph. The visible contents are approx. 3 discs in envelopes. Sealed bag with label 11-15780 Item 7, Desc. Eight cell phones. The visible contents are 8 cell phones. 1. Blackberry, red in color with red plastic cover (S/N not visible) 2. LG T-Mobile, pink in color (S/N not visible) 3. Alltel Samsung, black in color (S/N not visible) 4. Samsung, model SGH-A117 S/N: A117GSMH 5. Verizon Samsung, model 9CH-U360, MEID HEX: A00000246D959A 6. LG, model LG220CM, S/N 005CYEA1520204 7. Samsung, model SPH-M340, HEX A000001D5A6B45 8. HTC Sprint, brown in color (S/N not visible). Sealed bag with label 11-15780:004 Desc. [SXP] Box of Trojan c. The visible contents are a box of Trojan condoms. Sealed bag with no label. The visible contents include various sealed/unsealed bags, miscellaneous documents, photos and credit cards." Docket 38-1 at 4-5.

4

used or attempted to be used to facilitate the illegal activity." Docket 38-1 at 5. Aramayo requested to "seize all of the items described above to search the phone devices' media files, videos, text messages, call logs, address books, and any other stored information as well as the laptop computer for any evidence that pertains to sex trafficking and/or transportation for sexual activity and related crimes, more fully described in Attachment A hereto, incorporated herein by reference." Docket 38-1 at 5.

Magistrate Judge Simko issued a warrant for the search and seizure of Aramayo's requested items. Campbell was charged with one count of sex trafficking by force, fraud, or coercion and one count of interstate transportation for prostitution on April 4, 2012. Docket 1. On September 20, 2012, Campbell moved to suppress the contents of Aramayo's search. Docket 29. Magistrate Judge Simko held an evidentiary hearing on the matter on October 3, 2012. Docket 34. Magistrate Judge Simko issued his report and recommendation on the motion to suppress on October 23, 2012, and he recommended that the motion to suppress be denied. Docket 38. On November 7, 2012, Campbell filed his objection to Magistrate Judge Simko's report and recommendation. Docket 42. The government did not respond.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1), "when a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, '[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.' " *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)). De novo review in the context of reviewing a magistrate judge's report and recommendation means a district court only "give[s] fresh consideration to those issues to which specific objection has been made by a party." *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (internal quotations and citations omitted). Accordingly, the court will review the disputed portions of Magistrate Judge Simko's report and recommendation de novo.

**DISCUSSION**

**I.      Factual Objections**

The first objection that Campbell makes to Magistrate Judge Simko's report and recommendation is the omission that Campbell was acquitted of the Illinois prostitution charge,[4] which is related to the same alleged activity he is accused of in this case. The court finds that such an omission is not unreasonable because it is clear upon the reading of Magistrate Judge Simko's report that the incident in Illinois related to prostitution because that charge

---

[4] The charge was keeping a place for prostitution.

6

also derived from M.A.'s contact with Illinois police and her claim that Campbell was prostituting her. Moreover, any specific omission as to the Illinois charge, its connection to this offense, or Campbell's acquittal has no bearing on this court's decision on the motion to suppress before it. Thus, Campbell's objection is overruled.

Additionally, Campbell objects that Magistrate Judge Simko did not specifically find that Aramayo's omission from her affidavit of the fact that Campbell was acquitted was intentional. Docket 42 at 1. There is no evidence[5] in the record, nor does Campbell point the court to any evidence, to suggest that Aramayo intended to withhold information relating to the Illinois offense. Regardless, any omission as to Campbell's acquittal is not relevant to the court's determination on probable cause for the South Dakota search. The objection is overruled.

Campbell also objects to the omission in Magistrate Judge Simko's order that the challenged search, conducted by Aramayo, was a secondary search occurring after a primary search in Illinois. Magistrate Judge Simko may not have used the terms primary and secondary, but he quoted directly from Aramayo's affidavit that describes the sequence of events leading up to both

---

[5] The evidentiary hearing is likewise void of any evidence of intent to exclude certain evidence by Aramayo nor did Campbell's attorney specifically ask Aramayo if she intended to exclude such information from her affidavit on cross-examination.

searches. The affidavit states that all evidence originally was seized in Illinois and subsequently searched by Aramayo after she submitted a subpoena to authorities in Illinois, submitted an affidavit to Magistrate Judge Simko, and received a warrant to execute her own search. Campbell's objection is overruled.

Finally, Campbell[6] objects to Magistrate Judge Simko's inclusion of footnote two in his report and recommendation, which discusses whether Cook County obtained a search warrant before conducting its search. But Magistrate Judge Simko did not reference information from this footnote when he described the evidence that he relied upon when he determined that the affidavit established probable cause. Because that fact was not discussed when Magistrate Judge Simko made his determination of probable cause, and he considered only evidence contained within the Aramayo affidavit,[7] the objection is overruled.

---

[6] Specifically, Campbell stated that "[t]here is no indication of consent or a warrant authorizing the examination, yet the results of that 'examination,' or search, are used to justify searching it again and searching the already seized (again without consent or a warrant) cell phones." Docket 30 at 2. The affidavit referenced M.A.'s consent to search and that the laptop computer was examined and evidence of the use of various websites to advertise prostitution was found.

[7] *See United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999) (discussing that the issuing judge should rely only on information contained in the affidavit to determine probable cause).

8

## II. Legal Objections

Campbell makes a number of objections that pertain to Magistrate Judge Simko's legal conclusion that there was probable cause to support the issuance of the warrant in this case. Campbell also asserts that there are three reasons why the *Leon* good faith exception does not apply and the evidence at issue should be excluded.

### A. Probable Cause Determination

#### 1. Credibility, Reliability, and Veracity of Confidential Source

Campbell argues that Magistrate Judge Simko improperly relied upon M.A.'s information supplied to Aramayo because the affidavit lacked any information about her credibility, reliability, or veracity. Additionally, M.A.'s statements were only corroborated by Campbell's arrest in Illinois, a case in which M.A. was the complaining witness. Docket 42 at 2. Campbell objects that such circular reasoning would render the corroboration rule meaningless.

A party establishes probable cause to issue a search warrant when the affidavit in support of that search warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). When the reviewing judge relies solely on the affidavit to issue the warrant, then he or she must make the probable cause determination

based upon "only that information which is found within the four corners of the affidavit." *United States v. Olvey*, 437 F.3d 804, 807 (8th Cir. 2006) (quotations and citations omitted). "Search warrant [a]pplications and affidavits should be read with common sense and not in a grudging, hyper technical fashion." *United States v. Ryan*, 293 F.3d 1059, 1061 (8th Cir. 2002) (quotations and citations omitted).

"Probable cause may be found in hearsay statements from reliable persons, in hearsay statements from confidential informants corroborated by independent investigation, or in observations made by trained law enforcement officers." *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) (internal citations omitted). If an affidavit includes information from a confidential informant, reliability of the informant is an important issue to be addressed. *Id.* (citation omitted). To support a finding of probable cause, the informant can be proven to be sufficiently reliable through corroboration by independent evidence. *Id.* (citations omitted). Once a confidential informant's information is corroborated, "then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993) (citation omitted).

The information that Aramayo attempted to corroborate was not the fact that Campbell merely had been arrested on prostitution charges, but was

10

M.A.'s entire version of events that unfolded in Illinois. What Aramayo could corroborate, through Illinois detective Giuliani, was that M.A. said she came to Illinois under force from Campbell for the purpose of engaging in prostitution. And that M.A. said she was attempting to flee from Campbell in Illinois when she was encountered by law enforcement during a traffic stop near the hotel where she and Campbell shared a room. Giuliani stated from his own independent knowledge that M.A. granted Illinois law enforcement officers consent to search her and Campbell's hotel room. Giuliani then confirmed that Campbell was present in the hotel room with a laptop computer and a number of cell phones. Giuliani also advised Aramayo that the laptop computer was searched and there was evidence that the laptop was used to access websites for the purpose of advertising prostitution.

These facts independently corroborate M.A.'s account that Campbell posted advertisements on websites for the purpose of prostituting her and that she traveled with Campbell to Illinois to engage in prostitution under threat of force. While some of the information may have been circular, *i.e.*, Aramayo was supporting M.A.'s statements to Aramayo with M.A.'s earlier statements to Illinois law enforcement, many of those facts were independently corroborated and provided indicia of reliability that supported Aramayo's affidavit and the

subsequent warrant.[8] For these reasons, probable cause was present, and Campbell's objection is overruled.

### 2. The Particularity Requirement

Campbell asserts that because Magistrate Judge Simko conceded that Aramayo could not have described the items to be searched with more particularity without an unjustified warrantless search is exactly why the supporting affidavit was defective. Docket 42 at 2. Magistrate Judge Simko did state that Aramayo requested the items from Cook County and they arrived in sealed bags so "[s]he could not, therefore, describe them with much more particularity without unsealing the bags and conducting a warrantless search." Docket 38 at 11. The record supports the conclusion, however, that the affidavit and warrant gave a description that was sufficiently definite and particular to enable Magistrate Judge Simko and the searcher to reasonably ascertain the place authorized to be searched and the things to be seized.

The purpose of the Fourth Amendment's particularity requirement is to prevent generalized searches by tempering the discretion given to the law

---

[8] Campbell objects to Magistrate Judge Simko's use of the word "knew" and attempts to draw a distinction between what Aramayo "knew" and what Aramayo "believed." Docket 42 at 2. When Magistrate Judge Simko stated that Aramayo "knew that MA . . . had been prostituting herself at Campbell's insistence" it appears that he meant that Aramayo had prior knowledge or evidence to support the assertion that Campbell was forcing M.A. into prostitution. The court hesitates to draw such a fine distinction and will not do so here. Campbell's objection is overruled.

enforcement officers who execute a warrant. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). According to the Eighth Circuit Court of Appeals, to satisfy the particularity requirement "the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." *United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999) (citation omitted). "The degree of specificity required will depend on the circumstances of the case and on the type of items involved." *Id.* "The particularity requirement is a standard of practical accuracy rather than a hyper technical one." *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007) (quotations and citations omitted).

In this case, the warrant was sufficiently definite to allow the searching officer to identify the place to be searched and which specific property was authorized to be searched. The warrant cross-referenced Attachment A to Aramayo's affidavit as the parameters for what was to be searched and how it could be searched. The warrant included a description of each evidence bag as well as the number written upon each bag. This was a sufficient description of what, in particular, was to be seized and searched. It would have been impractical for Aramayo, and subsequently, Magistrate Judge Simko, to describe the contents of the evidence bags with more particularity. *See Summage*, 481 F.3d at 1079 ("The requirement of particularity must be assessed in terms of practicality."). Campbell's objection is overruled.

Campbell also asserts that the court did not address Aramayo's use of generic statements in her affidavit like a "disk of evidence," a "CD of evidence," or "Sealed bag with no label." For that reason, Campbell claims that the search terms gave the court no guidance as to what particular items the court was being asked for authorization to search. First, "[a] search warrant may contain a catchall phrase as long as it sufficiently limits the discretion of the officers in executing the warrant." *United States v. Gruber*, 994 F. Supp. 1026, 1036 (N.D. Iowa 1998) (citing *Andresen v. Maryland*, 427 U.S. 463, 479-82 (1976)). Second, the search executed in this case was not a generic search of a home or physical location, but rather a search limited to evidence sent from a finite location in Illinois where almost all items were specifically enumerated by individualized numbers. While Aramayo used generic or catchall terms to describe some evidence like "disk of evidence" or "CD of evidence," she also included the numeric label that was found on each bag of evidence and included a description of the bag's contents.[9] Additionally, the use of the phrase "Sealed bag with no label" could have only referred to one item and it was readily apparent which item that was. These descriptions were sufficient considering the type and location of items to be searched and the circumstances of the case. Accordingly, Campbell's objection is denied.

---

[9] Aramayo included descriptions of the contents of the bags that were included on the inventory sent by the Cook County State's Attorney's Office as well as her own descriptions of what she perceived. Docket 38-1 at 2.

### B. *Leon* Good Faith Exception

Magistrate Judge Simko concluded that even if probable cause was lacking, the *Leon* good faith exception applied and shielded the evidence from suppression. Campbell objects and claims *Leon* does not apply in this case; therefore, the evidence should be suppressed. Campbell states that Magistrate Judge Simko abandoned his judicial role, that the affidavit was so lacking in probable cause to render belief in its existence unreasonable, and that the warrant was so facially deficient that the executing officer could not reasonably presume it to be valid.

In *United States v. Leon*, 468 U.S. 897 (1984), the United States Supreme Court determined that evidence obtained from a subsequently invalidated search warrant does not need to be excluded from the prosecution's case if the officers executing the search warrant acted in objectively reasonable reliance on the court's determination of probable cause. This so-called "good faith exception" does not apply:

(1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;

(2) when the issuing judge wholly abandoned his judicial role;

(3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*; and

15

(4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Houston*, 665 F.3d 991, 994 (8th Cir. 2012) (quoting *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (internal quotations omitted) (emphasis in original)).

Campbell claims that Magistrate Judge Simko abandoned his judicial role when authorizing a warrant based on an affidavit so lacking in particularity. Campbell does not, however, express specifically why he believes this to be true. There is no evidence in the record to suggest that as the issuing judge, Magistrate Judge Simko did not remain neutral and detached in making his probable cause determination. Moreover, there is no evidence that he "wholly abandoned [his] judicial role." *See Leon*, 468 U.S. at 923. And as the court determined above, neither the warrant nor the affidavit were lacking in probable cause or in particularity, which undercuts Campbell's argument on this issue. Campbell's objection is overruled.

Campbell asserts that Aramayo's affidavit was so lacking in probable cause that her belief in the existence of probable cause was unreasonable. Docket 42 at 3. Campbell argues that the affidavit revealed that the primary search resulting in the seized items had already occurred and there was nothing on the face of the affidavit that justified the search. Aramayo did include, however, sufficient information to amount to probable cause through the claims of confidential informant, M.A., and the independent corroboration

from Detective Giuliani. Additionally, the affidavit described M.A.'s consent to search her and Campbell's hotel room.

Consent to search is a valid exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). Co-inhabitants of the same residence have equal legal authority to permit searches or entry into a premises. *United States v. Clutter*, 674 F.3d 980, 983 (8th Cir. 2012) (citations omitted). Such consent "may be given either by the suspect or by some other person who has common authority over, or sufficient relationship to, the item to be searched." *United States v. James*, 353 F.3d 606, 613 (8th Cir. 2003) (citation omitted). The information that M.A., as a co-inhabitant of Campbell's hotel room, gave consent to search coupled with the other evidence in the record is sufficient to support a reasonable belief that probable cause existed. There is no evidence to support a conclusion that the affidavit was *so lacking* in probable cause to render belief in its existence unreasonable. The objection is overruled.

Finally, Campbell argues that the warrant was so facially deficient that Aramayo, as the executing officer, could not have presumed it to be valid. Docket 42 at 3. Campbell claims that because Aramayo failed to describe the items to be searched with particularity, the warrant was facially deficient.

This court has already determined de novo that Aramayo's affidavit met the particularity requirement. Campbell has provided no other grounds to

17

establish how the warrant was so facially deficient that no police officer could presume it to be valid. In addition, the Eighth Circuit has repeatedly instructed that " '[w]hen assessing the objective [reasonableness] of police officers executing a warrant, we must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge.' " *Houston*, 665 F.3d at 995 (quoting *Proell*, 485 F.3d at 430). Under the totality of the circumstances, with all of Aramayo's knowledge both in the affidavit and outside of it, there is insufficient support for the proposition that the warrant was so facially deficient that no officer could presume it to be valid. For the reasons stated above, Campbell's objections are overruled.

## CONCLUSION

After a de novo review of Campbell's objections to Magistrate Judge Simko's report and recommendation, the court determines that none of the objections to the factual findings or legal conclusions have merit. The court concludes that Aramayo's affidavit and the subsequent search warrant met the particularity requirement, that probable cause existed to issue the search warrant, and that even if probable cause did not exist, the *Leon* good faith exception prevents suppression of the evidence. Accordingly, it is

ORDERED that Campbell's objections to Magistrate Judge Simko's report and recommendation (Docket 42) are overruled, Campbell's motion to suppress

(Docket 29) is denied, and the report and recommendation (Docket 38) is adopted in its entirety.

Dated December 5, 2012.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE